UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| ROBERT BOYD ) | 3:19-CV-00895 (KAD) |
| *Plaintiff*, ) | |
| ) | |
| v. ) | |
| ) | |
| CITY OF HARTFORD, ET AL. ) | AUGUST 24, 2022 |
| *Defendants*. ) | |

**MEMORANDUM OF DECISION**
**RE: DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (ECF NO. 88)**

Kari A. Dooley, United States District Judge:

This civil rights action, brought pursuant to 42 U.S.C. §1983, arises out of the arrest and pretrial detention of the Plaintiff, Robert Boyd ("Plaintiff"). Plaintiff alleges that Defendant Detective Kimberly Wall of the Hartford Police Department ("HPD"), in her individual capacity, and by extension Defendant City of Hartford ("Hartford"), filed a false and fraudulent affidavit in support of an application for a warrant for his arrest in violation of the Fourth and Fourteenth Amendments to the United States Constitution.[1] Pending before the Court is Defendants' motion for summary judgment, which Plaintiff opposes.[2] The Court has considered the parties' memoranda and accompanying exhibits. For the following reasons, the motion for summary judgment is GRANTED.

**Relevant Facts**

Preliminarily, the Court observes that Plaintiff did not file a Rule 56(a)(2) Statement in response to Defendants' Rule 56(a)(1) Statement of Undisputed Material Facts ("Def. LRS," ECF

---

[1] Both Detective Wall and Hartford are named as defendants and are collectively referred to as "Defendants." Plaintiff's claims against Hartford are based in Connecticut municipal liability and indemnity statutes, addressed *infra*.
[2] Although the Defendants assert in the motion for summary judgment that they seek judgment on all claims, Defendants failed to address in their briefing any of the claims asserted under the provisions of the Connecticut Constitution. As discussed *infra.*, the Court does not address the merits of those claims but instead dismisses them considering the Court's inclination not to exercise supplemental jurisdiction.

No. 88-2). As such, Defendants ask the Court to deem their statements admitted pursuant to Local Rule 56(a)(3). Although Plaintiff's submission ("Pl. Aff.," ECF No. 92-1) did not meet the letter of the rule, he did file an affidavit asserting facts which he argues create genuine issues of material fact. More to the point, however, Plaintiff—with only slight exception—accepts as accurate the facts set forth by Defendants. If there are disputed facts, they appear to be immaterial to or outside the scope of the issues raised and decided herein. The largely uncontested facts, except where noted, are set forth below.

Plaintiff is a citizen and resident of Hartford, Connecticut. Am. Compl. ¶ 6, ECF No. 14. Detective Wall has been employed with the Major Crimes Division of HPD since January of 2015. Def. LRS ¶¶ 1, 3. She was the affiant in connection with Plaintiff's arrest warrant and served as the investigating officer for his case. *Id.* On January 19, 2015, Edward Russo, a resident of Metuchen, New Jersey, filed a complaint with the Metuchen Police Department reporting identity theft, including fraudulent activity on his credit report. *Id.* at ¶ 3–4. Mr. Russo reported that Raymour & Flanigan alerted him to a loan taken in his name, the balance of which was due for furniture that was delivered to 15 Harper Street in Hartford, CT, and Bank of America alerted him to a credit card account opened in his name, with an associated address of 15 Harper Street in Hartford, CT. *Id.* at ¶ 5. On January 26, 2015, Detective Wall and Agent Chris Riggi of the Internal Revenue Service visited 15-17 Harper Street in Hartford, where Plaintiff, who identified himself as Robert Boyd, answered the door. *Id.* at ¶ 6. When Detective Wall asked Plaintiff about a furniture delivery to 15 Harper Street, he said he did not know anything about it. When Detective Wall asked Plaintiff if he recognized the name Edward Russo, he stated that several United States Postal Service items addressed to an Edward Russo were placed in his mailbox. Plaintiff provided the mail addressed to Edward Russo to Detective Wall, as well as envelopes he received addressed

2

to a Jeffrey Chernoff. *Id.* at ¶ 7. Plaintiff further reported to Detective Wall that he believed the suspicious mail activity was related to an old acquaintance of his, Brian Belcher, who had been seen taking mail from the 15-17 Harper Street mailbox within the past month.[3] *Id.* at ¶ 8.

      Detective Wall searched Brian Belcher in the HPD database and learned of his extensive criminal history, including 21 arrests, some of which were for charges of Criminal Impersonation, Forgery, Larceny, and Issuing a Bad Check.[4] *Id.* at ¶ 9. Upon receiving permission from Mr. Russo, Detective Wall opened the mail addressed to him at Harper Street and found letters containing billing statements with outstanding balances from several businesses. *Id.* at ¶ 10. Mr. Russo confirmed that he neither opened nor authorized the opening of any lines of credit in his name and that he never lived in Hartford. *Id.* One of the pieces of mail addressed to Jeffrey Chertoff had a return address of Nutmeg State Federal Credit Union, 521 Cromwell Avenue, Rocky Hill, Ct. *Id.* at ¶ 11. Detective Wall contacted the Vice President of Nutmeg State Federal Credit Union, Mike Nowicky, who told her that he had recently repossessed a vehicle at 15 Harper Street because of a default automobile loan in the name of Jeffrey Chertoff. The loan was an indirect loan conducted at VEB Auto Sales in Hartford. *Id.* at ¶ 12. When Detective Wall contacted Jeffrey Chertoff, who lived in New York, New York, he confirmed that he neither opened a credit account with Nutmeg State Federal Credit Union, among other accounts, nor made an automobile purchase at VEB Auto.[5] *Id.* at ¶ 13.

---

[3] Plaintiff contests whether it was he or his then-girlfriend and roommate, Monica Reid, who had seen Mr. Belcher taking mail from the 15-17 Harper Street mailbox. Defendants state that Plaintiff claimed he had seen Mr. Belcher, whereas Plaintiff attests that Ms. Reid saw Mr. Belcher and reported it to Plaintiff. *Id.* at ¶ 8; Pl. Dep. Tr. at 47, Ex. B, Lines 17–22, ECF No. 88-7. For purposes of summary judgment, this factual discrepancy is not material.

[4] Plaintiff's criminal history includes charges of Disorderly Conduct, Breach of Peace, and Driving Under the Influence, but nothing related to fraud. *Id.* at ¶ 9.

[5] Because Mr. Chertoff denied purchasing an automobile at VEB Auto Sales, he also denied applying for a car loan relative to any purchase at Nutmeg State Federal Credit Union. *Id.* at ¶ 13.

Detective Wall notified Mr. Nowicky that the loan had been obtained using a stolen identity. Mr. Nowicky provided Detective Wall with copies of the loan file, which showed that the automobile was purchased at VEB Auto at 125 New Park Avenue, Hartford, CT. The loan was signed by "Jeffrey Chertoff" and co-signed by Plaintiff. The file contained a photocopy of Plaintiff's Connecticut driver's license as well as one of a fake identification that portrayed an identical portrait of the photo of Brian Belcher obtained from his arrest history.[6] *Id.* at ¶ 14. Plaintiff admits that he accompanied Mr. Belcher to VEB Auto to obtain a loan for a motor vehicle, which was corroborated by a salesman at VEB Auto who identified Plaintiff as the co-buyer. *Id.* at ¶¶ 15–16; Pl. Aff. ¶ 7. Plaintiff's affidavit asserts, however, that when he went to VEB Auto with Mr. Belcher, he was "unaware that he [Mr. Belcher] was falsifying his identity to take out a loan for a vehicle." Pl. Aff. ¶ 16.[7]

Detective Wall continued to investigate and based upon witness statements and information obtained from the investigation, she found what she considered sufficient evidence of a conspiracy between Plaintiff and Mr. Belcher to steal the identity of Mr. Chertoff and—based on at least a strong suspicion—to steal the identify of Mr. Russo.[8] Def. LRS ¶ 17. On April 2, 2015, Detective Wall presented applications to the court seeking arrest warrants for both Plaintiff and Mr. Belcher, charging each with one count of Conspiracy to Commit Identity Theft in the First Degree in violation of Connecticut General Statutes ("C.G.S.") § 53a-48/53a-129b; one count of Identity Theft in the First Degree in violation of C.G.S. § 53a-129b; and one count of Larceny in the First Degree in violation of C.G.S. § 53a-122. *Id.* at ¶¶ 18–19. Detective Wall's supervisor, Sergeant

---

[6] The real Jeffrey Chertoff is a white male and Brian Belcher is a black male. *Id.* at ¶ 14.
[7] Whether this is a disputed fact is not material. There is no evidence that when submitting the application for the arrest warrant, Detective Wall had any knowledge of this fact.
[8] Plaintiff challenges the reasonableness of this assessment, discussed *infra*.

4

Reginald Early, reviewed and approved her application for the arrest warrants (the "Application") prior to their submission. *Id.* at ¶ 20.

On April 6, 2015, Assistant State's Attorney Mirella Giambalvo, a prosecutor, reviewed and signed the Application. *Id.* at ¶ 21. And on April 7, 2015, Connecticut Superior Court Judge A. Avallone, in the judicial district of Hartford, reviewed and approved the Application and issued an arrest warrant for Plaintiff, thereby finding "probable cause to believe that an offense has been committed and that the accused committed it." *Id.* at ¶ 22. Plaintiff describes this process as "everyone" "rubber stamping" the legal and factual "recommendations" of Detective Wall. Pl. Aff. ¶ 21.

On May 14, 2015, while already detained at Hartford Correctional for a domestic violence charge, Plaintiff was served with the arrest warrant. Def. LRS ¶ 23. That same day, Plaintiff was arraigned before the court on two pending criminal matters. He was appointed a public defender and bond was set at $20,000 in the case arising out of Detective Wall's investigation.[9] *Id.* at ¶ 24. At no time was Plaintiff able to post bond on either criminal case pending against him and, for both matters, a public defender represented him. *Id.* at ¶¶ 25–26. On July 22, 2015, Plaintiff appeared in court, entered a not guilty plea and elected to be tried by a jury on the identity theft charges. *Id.* at ¶ 27. On September 2, 2015, Plaintiff appeared in court and his defense attorney explained that the State offered, by way of a plea bargain, to reduce the charges to misdemeanors with an agreed upon sentence of five years of incarceration to be suspended after two and a half years and three years of probation. *Id.* at ¶ 28. At a pretrial hearing on September 16, 2015, Plaintiff rejected the State's offer. *Id.* at ¶ 29. At another pretrial hearing on September 30, 2015, Plaintiff again rejected the State's offer as outlined above, and the court placed the case on the jury trial

---

[9] In the second case, the court set bond at $75,000. *Id.* at ¶ 24.

5

list. *Id.* at ¶ 30. Jury selection was set to commence on June 10, 2016. *Id.* at ¶ 32. On June 10, 2016, the date scheduled for jury selection, however, State's attorney Michael Weber informed the court that the State would enter a *nolle prosequi* of the charges against Plaintiff.[10] *Id.* at ¶ 33.

Defendants aver that throughout the investigation, Detective Wall acted in her official capacity as a police officer of HPD and acted in good faith and without malicious intent. *Id.* at ¶ 34. They further attest that she did not falsify or fabricate any information or facts in the Application and believed there existed probable cause for Plaintiff's arrest. *Id.* at ¶¶ 41–42. Defendants also aver that Plaintiff agreed that all the factual allegations contained in the Application were in fact true, and that his real complaint regarding the investigation derives from his belief that only Mr. Belcher should have been arrested based on those facts. *Id.* at ¶ 39. Plaintiff claims to have suffered emotional distress and pain, as well as the loss of his home, car and clothes due to this prosecution. Pl. Aff. ¶¶ 33–34. Plaintiff attributes the proximate cause of his injury to Detective Wall's "breach of her duty to make truthful statements" and her "[misrepresentation of] facts creating a falsification of evidence." *Id.* at ¶ 25. Plaintiff's position is, in essence, that because he is innocent, "it was objectively unreasonable for Detective Wall to recommend there was probable cause to arrest me because her conclusion of facts and law was erroneous." *Id.* at ¶ 19. Notwithstanding, he acknowledges that "all of the facts in the arrest warrant are true." *Id.* at ¶ 21.

**Standard of Review**

The standard under which the Court reviews motions for summary judgment is well-established. "The court shall grant summary judgment if the movant shows that there is no genuine

---

[10] Attorney Weber explained that Mr. Chertoff, an out of state resident, was unwilling to attend trial in Connecticut and that Nutmeg State Federal Credit Union had no out-of-pocket damages. *Id.* at ¶ 33. Thus, the State *nolled* the charges because the victims were uninterested in pursuing them, not because there was a lack of probable cause, or any misrepresentation made by Detective Wall. *Id.* at ¶ 37. Plaintiff disputes this conclusion but offers no contrary evidence to support his assertion.

dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A genuine issue of material fact is one that 'might affect the outcome of the suit under the governing law' and as to which 'a reasonable jury could return a verdict for the nonmoving party.'" *Noll v. Int'l Bus. Machines Corp.*, 787 F.3d 89, 94 (2d Cir. 2015) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

The inquiry conducted by the court when reviewing a motion for summary judgment focuses on "whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson*, 477 U.S. at 250. Accordingly, the moving party may satisfy its burden "by showing . . . that there is an absence of evidence to support the nonmoving party's case." *PepsiCo, Inc. v. Coca-Cola Co.,* 315 F.3d 101, 105 (2d Cir. 2002) (per curiam) (quotation marks and citations omitted). Once the movant meets its burden, "[t]he nonmoving party must set forth specific facts showing that there is a genuine issue for trial." *Irizarry v. Catsimatidis*, 722 F.3d 99, 103 n.2 (2d Cir. 2013) (quoting *Rubens v. Mason*, 527 F.3d 252, 254 (2d Cir. 2008)). "[T]he party opposing summary judgment may not merely rest on the allegations or denials of his pleading" to establish a disputed fact. *Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009). "[M]ere speculation or conjecture as to the true nature of the facts" will not suffice. *Hicks v. Baines*, 593 F.3d 159, 166 (2d Cir. 2010) (citation omitted). The standard thus requires "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson*, 477 U.S. at 249.

In assessing the presence or absence of a genuine dispute as to a material fact, the court is "required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." *Johnson v. Killian*, 680 F.3d 234, 236 (2d Cir. 2012)

(per curiam) (quoting *Terry v. Ashcroft*, 336 F.3d 128, 137 (2d Cir. 2003)). "In deciding a motion for summary judgment, the district court's function is not to weigh the evidence or resolve issues of fact; it is confined to deciding whether a rational juror could find in favor of the non-moving party." *Lucente v. Int'l Bus. Machines Corp.*, 310 F.3d 243, 254 (2d Cir. 2002).

**Discussion**

Plaintiff brings several claims. In Count One, he brings a § 1983 claim against Detective Wall alleging false arrest, malicious prosecution and false imprisonment in violation of the Fourth Amendment. In Count Three, he brings a § 1983 claim against Detective Wall alleging falsification of evidence in violation of the Fourteenth Amendment. In Count Two, he advances several state common law claims deriving from the same allegations against Detective Wall. In Count Five, Plaintiff brings companion state law claims under C.G.S. §§ 52-557n and 7-465 against Hartford.[11] Each of Plaintiff's claims derive from the manner in which Defendant Wall investigated the identity theft of Messrs. Chertoff and Russo and her subsequent conclusion that Plaintiff and Mr. Belcher conspired to commit the same. And each claim is premised upon the allegation that Defendant Wall knowingly submitted a false affidavit in the Application. Defendants argue that they are entitled to summary judgment on each of these claims. The Court agrees.

*Count One: Fourth Amendment False Arrest, Malicious Prosecution and False Imprisonment*

Under § 1983, liability arises if "under color of any statute," a person "subjects, or causes to be subjected, any citizen of the United States…the deprivation of any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983. Thus, only state actors, whether government officials or private individuals acting under the color of state law, may be

---

[11] Count Four, which asserted § 1983 claims against Hartford, had been previously dismissed by way of the Court's adoption of then-Magistrate Judge Merriam's Recommended Ruling. *See* ECF Nos. 17, 19.

sued under § 1983. *See Tancredi v. Metropolitan Life Ins. Co.*, 316 F.3d 308, 312 (2d Cir. 2003) (citations omitted). The parties do not dispute that Defendant Wall was an officer within HPD, and thus a government actor, for purposes of Plaintiff's § 1983 claims. Instead, the Defendants argue that Plaintiff cannot establish a Fourth Amendment violation for malicious prosecution, false arrest or false imprisonment because there was probable cause to arrest him. The Court agrees that Plaintiff has not, and indeed cannot, establish any Fourth Amendment violations on the undisputed facts of this case.

"To state a valid claim for false arrest or malicious prosecution under § 1983, a plaintiff must plead an unreasonable deprivation of liberty in violation of the Fourth Amendment and satisfy the state law elements of the underlying claims." *Chase v. Nodine's Smokehouse, Inc.*, 360 F. Supp. 3d 98, 111 (D. Conn. 2019) (quotations omitted). Under Connecticut law, prevailing on either a malicious prosecution or false arrest claim requires a demonstration that the defendant acted without probable cause.[12] *See McHale v. W.B.S. Corp.*, 187 Conn. 445, 447 (1982) (malicious prosecution); *Marchand v. Simonson*, 16 F. Supp. 3d 97, 109 (D. Conn. 2014) (false arrest). Therefore, "[t]he existence of probable cause is a complete defense to claims of false arrest and malicious prosecution under both federal and Connecticut law." *Chase*, 360 F. Supp. 3d at 112 (citing *Williams v. Town of Greenburgh*, 535 F.3d 71, 78–79 (2d Cir. 2008)); *Walczyk v. Rio*, 496 F.3d 139, 152 n. 14 (2d Cir. 2007); *Johnson v. Ford*, 496 F. Supp. 2d 209, 213 (D. Conn. 2007).

Similarly, when analyzing claims of false imprisonment, federal courts look to the law of the state in which the imprisonment occurred. *See Davis v. Rodriguez*, 354 F.3d 424, 433 (2d Cir. 2004); *Russo v. City of Bridgeport*, 479 F.3d 196, 204 (2d Cir. 2007) ("Connecticut state law principles…determine the validity of [the Plaintiff's] federal civil rights claim based on false

---

[12] Under Connecticut law, a plaintiff may only prevail on a malicious prosecution claim if he also proves that the defendant acted with malice. *See Roberts v. Babkiewicz*, 582 F.3d 418, 420 (2d Cir. 2009).

9

imprisonment."). In Connecticut, false imprisonment is the "unlawful restraint by one person of the physical liberty of another." *Green v. Donroe*, 186 Conn. 265, 267, 440 A.2d 873 (Conn. 1982). And it is well established that in Connecticut, probable cause is a complete defense to a false imprisonment claim. *See Johnson*, 496 F. Supp. 2d at 213.

Probable cause exists when officers have "knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime." *Walczyk*, 496 F.3d at 156. And a plaintiff arguing that a warrant was issued on "less than probable cause faces a heavy burden." *Golino v. City of New Haven*, 950 F.2d 864, 870 (2d Cir. 1991); *Martel v. Town of South Windsor*, 345 Fed. App'x 663, 664 (2d Cir. 2009). Indeed, when an arrest is made pursuant to a warrant issued by a neutral magistrate, the warrant is "presumed reasonable because such warrants may issue only upon a showing of probable cause." *Walczyk*, 496 F.3d at 155–56. A court reviewing an issuing judge's finding of probable cause "must accord considerable deference to the probable cause determination . . ." *Walczyk*, 496 F.3d at 157; *see also Illinois v. Gates*, 462 U.S. 213, 236 (1983) ("[W]e have repeatedly said that after-the-fact scrutiny by courts of the sufficiency of an affidavit should not take the form of *de novo* review. A magistrate's determination of probable cause should be paid great deference by reviewing courts.") (internal quotation marks and citations omitted). The reviewing court's task "is simply to ensure that the totality of the circumstances afforded the [issuing judge] 'a substantial basis' for making the requisite probable cause determination." *United States v. Thomas*, 788 F.3d 345, 350 (2d Cir. 2015) (citing *Gates*, 462 U.S. at 238). Additionally, the issuing judge's "finding of probable cause is itself a substantial factor tending to uphold the validity of [a] warrant." *United States v. Travisano*, 724 F.2d 341, 345 (2d Cir. 1983) (internal citations omitted).

Generally, a plaintiff may overcome the presumption of reasonableness by "showing that 'the officer submitting the probable cause affidavit knowingly and intentionally, or with reckless disregard for the truth, made a false statement in his affidavit' or omitted material information, and that such false or omitted information was 'necessary to the finding of probable cause.'" *Chase*, 360 F. Supp. 3d at 112–13 (quoting *Soares v. Connecticut*, 8 F.3d 917, 920 (2d Cir. 1993)) (further quotations and citations omitted).

Here, because the warrant is entitled to the presumption of reasonableness and the judge's determination of probable cause is entitled to substantial deference, Plaintiff bears a heavy burden in challenging his arrest as unlawful. He seeks to do so by alleging that Detective Wall submitted false and erroneous information in the Application.[13] However, he identifies no false statements in Detective Wall's affidavit. To the contrary, Plaintiff has conceded that all the factual assertions included in the Application were true. *See* Pl. Dep. Tr. at 42, Lines 17–25; at 43, Lines 1–3; at 49, Lines 9–17; at 50, Lines 1–11. Perhaps misapprehending the nature of the process, Plaintiff argues that there must be some falsity if Detective Wall asserted in the affidavit that there was probable cause to arrest him because he was innocent of the crimes for which the warrant issued. But a law enforcement officer's attestation or belief as to the existence of probable cause is a legal conclusion and opinion. It is not, as Plaintiff would posit, a "fact" for purposes of assessing the veracity of the Application. Indeed, an accused may well be innocent of an offense notwithstanding the existence of probable cause for the accusation. That is why an accused is entitled to a jury trial at which it is the state's burden to establish guilt beyond a reasonable doubt.

---

[13] The Court does not accept Plaintiff's assertion that the prosecuting authority and the Connecticut Superior Court judge "rubber stamped" the warrant application, as there is no record evidence to support this theory. Pl. Aff. at ¶ 21. Plaintiff is also not competent to offer such testimony from personal knowledge, so such an assertion is, at most, a lay opinion based upon conjecture—and a cynical one at that.

Nor does Plaintiff identify any material fact known and purposefully omitted from the Application by Detective Wall. He merely alleges, in conclusory fashion, that it was "objectively unreasonable for Detective Wall to recommend there was probable cause to arrest me because her conclusion of facts and law was erroneous," Pl. Aff. ¶ 19; that Detective Wall "knew or should have known [of Belcher's treachery toward the Plaintiff][14] yet intentionally disregard [sic] these factual inferences to falsely recommend the arrest," *Id.* at ¶ 26; and that the state court entered a nolle "because of lack of probable cause or misrepresentation of a factual basis by Detective Wall," *Id.* at ¶ 31. These are all conclusory allegations and opinions, even if firmly held, that the Court need not—and does not—accept as true. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Major League Baseball Props., Inc. v. Salvino, Inc.,* 542 F.3d 290, 310 (2d Cir. 2008) ("A party opposing summary judgment does not show the existence of a genuine issue of fact to be tried merely by making assertions that are conclusory."). Quite simply, Plaintiff has identified no evidentiary support for these assertions. For example, there is no direct evidence or even evidence from which one could infer that Detective Wall knew or should have known that Mr. Belcher was deceiving or manipulating the Plaintiff. Therefore, the Plaintiff has not met his heavy burden of challenging the judicial determination of probable cause.

Notwithstanding, the Court finds that there is no question that the Application provided probable cause for Plaintiff's arrest. The furniture purchased with Mr. Russo's stolen identity was placed for delivery to Plaintiff's address. Mail addressed to Mr. Russo was delivered to Plaintiff's address. Plaintiff possessed mail addressed to Mr. Chertoff. Mr. Belcher used fake identification and credit obtained in the name of Mr. Chertoff to purchase a vehicle, of which Plaintiff was identified as a co-buyer. The car salesman identified Plaintiff as a participant in the sale. Plaintiff

---

[14] Referring to Mr. Belcher taking advantage of Plaintiff by "misrepresenting and concealing his identity and collecting mail at Boyd address without my knowledge." *Id.* at ¶ 25.

referred to Mr. Belcher in a conversation with Detective Wall as an acquaintance from long ago, even though the purchase of the car had occurred only five months before that conversation. And it was Plaintiff himself who first pointed the finger at Mr. Belcher, which allows an inference of inside knowledge as to Mr. Belcher's nefarious activities. Although not an exhaustive list of the facts available to Detective Wall, the Court is satisfied that there is no genuine issue of material fact that there was probable cause for the warrant at issue. Accordingly, Detective Wall is entitled to summary judgment on each of Plaintiff's claims predicated on purported violations of the Fourth Amendment.

*Count Three: Fourteenth Amendment Fabrication of Evidence*

Plaintiff also asserts a Fourteenth Amendment claim based upon Detective Wall's "fabrication of evidence" in connection with the Application, which resulted in his false imprisonment. Defendants are denied due process under the Fourteenth Amendment when criminal charges rest on fabricated evidence.[15] *See Harasz v. Katz*, 239 F. Supp. 3d 461, 491 (D. Conn. 2017); *see also Zahrey v. Coffey*, 221 F.3d 342, 349 (2d Cir. 2000) (finding that everyone possesses the "right not to be deprived of liberty as a result of the fabrication of evidence by a government officer acting in an investigating capacity."). As discussed above, however, Plaintiff does not, as a factual matter, contest any of the evidence cited to or relied upon in the Application. He cites to nothing in the application that was even arguably fabricated. *See Amory v. Katz,* 3:14-CV-01535 (VAB), 2016 WL 7377091, at *9 (D. Conn. Dec. 19, 2016) (finding that a plaintiff failed to state a claim for fabrication of evidence where the factual allegations he provided did not

---

[15] There has been some inconsistency within the Second Circuit as to whether fabrication of evidence claims arise under the Sixth Amendment's right to a fair and speedy trial or under the due process clauses of the Fifth and Fourteenth Amendments. *See Morse v. Fusto*, 804 F.3d 538, 547 n.7 (2d Cir. 2015). Regardless of which constitutional amendment prohibits the fabrication of evidence, it is clearly established that the harm caused by such conduct "is redressable through a § 1983 action for damages." *Id.* (citing *Morse v. Spitzer*, NO. 07-CV-4793, 2013 WL 359326, at *3 n.1 (E.D.N.Y. Sept. 30, 2011, as corrected Jan. 29, 2013).

include any specific claims of fabrication but only conclusory statements that officers' descriptions were "false"). And again, Plaintiff's disagreement with the finding of probable cause does not make Detective Wall's attestation of probable cause a fabrication. Plaintiff states, "based upon her investigation, the statements and information obtained from witnesses and victims, (which he concedes were accurately set forth in the Application), Detective Wall should have concluded that there was insufficient evidence that Boyd conspired with or used the identity of Jeffrey Chertoff or Edward Russo…Yet on April 2, 2015, Detective Wall recommended that the state court issue a warrant for the arrest of Mr. Boyd…" Pl. Mem. at 6, ECF No. 90-1. Plaintiff's belief in his own innocence does not undermine the conclusion that Detective Wall did not fabricate evidence when submitting the Application. Therefore, Detective Wall is entitled to summary judgment as to Plaintiff's Fourteenth Amendment fabrication of evidence claim.

*Count Two: Common Law Claims*

In Count Two, Plaintiff identifies a series of common law claims, to include negligence, negligent infliction of emotional distress, intentional infliction of emotional distress, malicious prosecution, false arrest and abuse of process. Except for the abuse of process claim, each of these claims fail for the reasons set forth above.

First, probable cause is an absolute defense to common law claims for false arrest and malicious prosecution. *See Tyus v. Newton*, No. 3:13-CV-1486 (SRU), 2015 WL 5306550, at *7 (D. Conn. Sept. 10, 2015) ("It is well-established that the existence of probable cause is a complete defense to claims of …false arrest…and malicious prosecution under both federal and Connecticut law."). Insofar as the Court has found that the arrest warrant was founded upon probable cause, these claims fail.

14

Second, the negligence, negligent infliction of emotional distress and intentional infliction of emotional distress claims are, as a factual matter, wholly derivative of Plaintiff's false arrest and malicious prosecution claims. Accordingly, they too fail. *See DeNuzzo v. Yale New Haven Hosp.*, 465 F. Supp. 2d 148, 152 (D. Conn. 2006) (where the court found a negligent misrepresentation claim derivative to a claim under the Federal Rehabilitation Act because there existed a "common nucleus of operative fact" and because the claims "concern[ed] the same conduct and w[ould] require the same evidence or determination of the same facts") (internal quotations and citations omitted); *see also Dollard v. City of New York*, 408 F. Supp. 3d 231, 239 (E.D.N.Y. 2019) (granting summary judgment for defendant where a plaintiff's claims for negligence, negligent infliction of emotional distress and intentional infliction of emotional distress because they were rooted in the same conduct that underlined her false arrest and malicious prosecution claims and to the extent plaintiff suffered any emotional damage, it was "entirely subsumed" by those claims).

Finally, although the Plaintiff does not identify any factual basis other than the false arrest and malicious prosecution claim in support of his abuse of process claim, the Court addresses this claim separately. "The torts of malicious prosecution and abuse of process are closely allied. While malicious prosecution concerns the improper issuance of process, the gist of abuse of process is the improper use of process after it is regularly issued." *Cook v. Sheldon*, 41 F.3d 73, 80 (2d Cir. 1994) (citation omitted). Under Connecticut law, "an action for abuse of process lies against any person using a legal process against another in an improper manner or to accomplish a purpose for which it was not designed." *Coppola Const. Co. v. Hoffman Enter. Ltd. P'ship*, 157 Conn. App. 139, 191, 117 A.3d 876, 909–10 (2015). Liability will not be found when the process is used for the purpose for which it is intended, even in the presence of an "incidental motive of spite or an

ulterior purpose of benefit to the defendant." *Id. See also, Suffield Development Associates Ltd. P'ship v. Nat'l Loan Investors, L.P.,* 260 Conn. 766, 772–73, 802 A.2d 44 (2002). Thus, an abuse of process requires the plaintiff to show: "(1) the defendant instituted proceedings or process against the plaintiff and (2) the defendant used the proceedings primarily to obtain a wrongful purpose for which the proceedings were not designed." 1 D. Pope, Connecticut Actions and Remedies, Tort Law (1993) § 8:02. As discussed above, Detective Wall instituted proceedings against the Plaintiff to secure his arrest following the conclusion of her investigation. There are no factual allegations to the contrary and, more importantly, no evidence to suggest otherwise—this is precisely the purpose for which the arrest warrant application process is designed. *See Zak v. Robertson*, 249 F. Supp. 2d 203, 209 (D. Conn. Mar. 17, 2003) (granting summary judgment for defendant on an abuse of process claim where plaintiff did not demonstrate any material issue of fact concerning an improper use of his arrest).

Thus, Detective Wall is entitled to summary judgment on Count Two.

*Qualified Immunity*

Although summary judgment is granted on other grounds, the Court briefly addresses qualified immunity as to Detective Wall. "[Q]ualified immunity protects government officials from suit if 'their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Gonzalez v. City of Schenectady*, 728 F.3d 149, 154 (2d Cir. 2013) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). The shield of qualified immunity insulates law enforcement officials from liability in their individual capacities unless the plaintiff demonstrates: "(1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Ganek v. Leibowitz*, 874 F.3d 73, 80 (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011)). However,

"[i]n this Circuit, even where the law is 'clearly established' and the scope of an official's permissible conduct is 'clearly defined,' the qualified immunity defense also protects an official if it was 'objectively reasonable' for him at the time of the challenged action to believe his acts were lawful." *Southerland v. City of New York*, 680 F.3d 127, 141 (quoting *Taravella v. Town of Wolcott*, 599 F.3d 129, 134 (2d Cir. 2010) (brackets omitted)). Here, even if the Court found that there was some genuine issue of material fact as to whether probable cause for Plaintiff's arrest existed, the Court would determine that Detective Wall's conduct was "objectively reasonable" insofar as she clearly had "arguable probable cause" to arrest Plaintiff. *See Martinez v. Simonetti*, 202 F.3d 625, 634 (2d Cir. 2000) ("In the context of a qualified immunity defense to an allegation of false arrest, the defending officer need only show 'arguable' probable cause" to establish the objective reasonableness of the officer's arrest of the plaintiff.). And where, as here, the officer's supervisor, a prosecutor and a judge each agreed with her assessment of the evidence, the objective reasonableness of her conduct is more than manifest. *See Cornelio v. Connecticut*, 3:16-cv-01421 (CSH), 2017 WL 2271667, at *10 (D. Conn. May 24, 2017) (finding it objectively reasonable for officers to believe they had probable cause because probable cause is a necessary element for a judge to issue the warrant); *see also Coderre v. City of Wallingford*, No. 3:08–cv–00959 (JAM), 2015 WL 4774391, at * 1 (D. Conn. Aug. 13, 2015) (finding at least arguable probable cause for purposes of granting defendants' motion for summary judgment when an arrest warrant was issued after an officer's supervisor, a state prosecutor and a judge of the Connecticut Superior Court all reviewed the application). Therefore, had it been necessary, she would have succeeded on her affirmative defense of qualified immunity.

*Count Five: Connecticut General Statutes § 52-557n and § 7-465*

Because Detective Wall is not liable to Plaintiff for any of the claims discussed above, C.G.S. § 52-557n, which establishes liability for a municipality for damage caused by one of its employees, is inapplicable. *See Hoyos v. City of Stamford*, No. 3:18-cv-01249 (VLB), 2021 WL 4263180, at *18 (D. Conn. Sept. 20, 2021) (finding that because the individual defendants were not liable to the plaintiff, the City of Stamford had no liability pursuant to § 52-557n). Similarly, C.G.S. § 7-465, which establishes that a municipality must indemnify an employee for damages for which the employee is found liable, has no application here because the Court has determined that Detective Wall is not liable to Plaintiff for any of the causes of action discussed above. *See id.* (finding that because individual defendants were not liable to the plaintiff, the City of Stamford had no duty to indemnify pursuant to § 7-465).

*Claims identified as brought pursuant to the Connecticut Constitution*

Although the Defendants purported to seek summary judgment with respect to the entirety of the Complaint, they do not include in their briefing Plaintiffs' claims asserted under various provisions of the Connecticut Constitution. The factual predicate for all the claims is essentially the same, but the legal theories advanced are different and would require separate analysis. The Court does not *sua sponte* take up issues not raised and briefed. *See Precision Trenchless, LLC v. Saertex multiCom LP*, No. 3:19-CV-0054 (JCH), 2022 WL 596740, at *25 (D. Conn. Feb. 28, 2022); *Venghaus v. City of Hartford*, No. 3:06CV01452 DJS, 2021 WL 1050014, at *1 (D. Conn. Mar. 27, 2012) ("The court will not resolve an issue in a motion for summary judgment that has not been briefed by either party"). However, for the reasons that follow, the Court declines to exercise supplemental jurisdiction over the remaining claims brought under the Connecticut Constitution.

All claims over which this Court has original jurisdiction are now resolved. *See* 28 U.S.C. § 1367(c)(3). Further, Plaintiff's complaint raises significant and novel issues of Connecticut law that have not yet been addressed by Connecticut appellate courts. For example, whether Connecticut recognizes a private right of action under several of the provisions relied upon, i.e., Articles 8 (Due Process), 13 (Treason and Felony) and 14 (Redress of Grievances). *See* 28 U.S.C. § 1367(c)(1); *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 726 (1966) ("Needless decision of state law should be avoided both as a matter of comity and to promote justice between the parties by procuring for them a surer-footed reading of applicable law."). And whether supplemental jurisdiction is properly exercised remains an open question throughout the litigation. *Id.* at 727. Accordingly, the Court declines to exercise supplemental jurisdiction over the state constitutional claims. *See Reyes v. Erickson*, 238 F. Supp. 2d 632, 639 (S.D.N.Y. 2003). All such claims are dismissed without prejudice.

**Conclusion**

For the foregoing reasons, Defendants' motion for summary judgment, which does not encompass claims brought under the Connecticut Constitution, is GRANTED. The Clerk of Court is directed to enter judgment in favor of Defendants and close this case.

**SO ORDERED** at Bridgeport, Connecticut, this 24th day of August 2022.

 */s/ Kari A. Dooley*
KARI A. DOOLEY
UNITED STATES DISTRICT JUDGE